UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-513-RJC
(3:14-cr-82-RJC-DSC-4)

| | | |
|---|---|---|
| CHRISTOPHER LEE GRIFFIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REDACTED** ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 [Doc. 1]. Also pending are the Respondent's Motion to Seal [Doc. 16] and Petitioner's Motion for Extension of Time [Doc. 18].

## I.      BACKGROUND

Petitioner was charged along with seven co-defendants for his participation in an illegal telemarking sweepstakes scheme that originated in Costa Rica. The charges pertaining to the Petitioner are: conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and 2326(2)(A)-(B) (Count One); wire fraud in violation of 18 U.S.C. § 1343, 2326(2)(A)-(B), and 2 (Counts Two through Eleven); conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Twelve); and international money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) and 2 (Counts Thirteen through Twenty-One). [3:14-cr-82 ("CR") Doc. 17] (Superseding Indictment). The Superseding Indictment contains a Notice that there is probable cause to believe that a money judgment of at least $10,691,642.65 is subject to forfeiture as the gross proceeds of the charged violations. [Id.].

Counsel        was        appointed        on        April        28,        2017,

1



[redacted]

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

Petitioner and co-defendant Andrew Smith proceeded to a joint jury trial on February 5, 2018.  Before trial, the Court granted the Government's motion to dismiss two of the wire fraud counts (Counts Eight and Eleven) and two of the international money laundering counts (Counts Nineteen and Twenty-One). [CR Docs. 165, 166].  The jury found Petitioner guilty of all 17 remaining counts. [CR Doc. 172] (Verdict).

The draft Presentence Investigation Report (PSR) calculated the base offense level as 7 because the offenses violated 18 U.S.C. § 1343.  [CR Doc. 185 at ¶ 33: Draft PSR]. Twenty levels were added pursuant to U.S. Sentencing Guideline 2B1.1(b)(1) because the loss amount exceeded $9,500,000; two levels were added because the offense involved more than 10 victims; two levels were added because the offense involved misrepresentation that the Petitioner and his co-conspirators were acting on behalf of a government agency; and two levels were added because part of the fraudulent scheme was committed outside the United States. [Id. at ¶¶ 34-37].

Defense counsel objected to the loss amount and argued at sentencing that the loss amount attributable to Petitioner was less than $1.5 million, by limiting the amount of time and number of transactions attributed to him. [CR Doc. 198] (PSR Objections); [CR Doc. 234 at 15] (Sentencing Hearing Transcript). The Government argued for a loss amount of over $9.5 million, and a 20-level enhancement in the offense level. See [CR Doc. 201 at ¶ 34]; [CR Doc. 234 at 16] (at

3

sentencing, arguing that the loss amount was $10,401,345). The Court found the loss attributable to Petitioner to be over $6 million, and reduced the § 2B1.1(b)(1) enhancement from 20 levels to 18 levels. [CR Doc. 234 at 26-27].

At the sentencing hearing, Petitioner discussed his conversations with counsel about pleading guilty as follows:

> In one of my first conversations with my attorney, Mr. Randall, I expressed to him my desire to plead guilty and take responsibility for the things that I had done for my part. **I asked him many times "Why can't I just plead guilty to what I did not for what other people in this case have done?" And I was never afforded that chance**.

> **Mr. Randall said we could try to do something called a, I think, it's a reverse proffer, but that the second I denied to working for Mr. Andrew Smith that the meeting would be over and we would most likely be shown the door, so there was really no point** because that was the story that the government had heard. That was the story they were choosing to believe, but it wasn't true. I was not going to lie just to save myself.

> Finally, about a week before my trial was to start Mr. Randall came to see me with an offer of sorts from the government. **The offer was so bad that he didn't even give me a copy of it. He told me that the offer called for me to say that I was guilty for basically everything in this case, to things I had nothing to do with, to things the government knew I was not involved with, things that were done by other people, some people I don't even know**.

> They wanted me to claim responsibility for the entire los amount in this case, which is something like **$16 million**, knowing full well I was only personally responsible for a small portion of that money.

> And as I said before, they wanted me to say I worked for Mr. Smith which just isn't true. Some of their theories are flawed, as the evidence in the trial showed….

> Also, if I'm not mistaken, **that offer was for something like 30 years in prison, and I believe Mr. Randall told me that if we went to trial and lost that I would more than certainly get less time than that**….

> Mr. Randall was hoping to use the trial to show that my **role** in this crime, and the **loss amount** that I was responsible for was very minimal compared to what I am being accused of, and **I believe he did a good job of showing those two issues** and allowing the government's own evidence to prove both points.

4

> Not once did we say at trial that I was not guilty because I am guilty. I'm just not guilty of everything the government is saying I did, and not to the extent they say I did it…..

[CR Doc. 234 at 35-36] (emphasis added).

The Court varied downward because it found that a life sentence was disproportionate; to avoid disparities; and to reflect his managerial role, time in the conspiracy, and loss amount. [CR Doc. 218 at 3] (Statement of Reasons). It sentenced Petitioner to concurrent sentences of 180 months' imprisonment on each count and an additional term of 60 months on the wire fraud conspiracy count pursuant to 18 U.S.C. § 2326, for a total term of imprisonment of 240 months, and ordered restitution of $9,612,590.39. [CR Doc. 217] (Judgment).

On direct appeal, Petitioner argued that the Court violated his Sixth Amendment right to a jury trial by determining the amount of loss attributable to him during sentencing proceedings instead of submitting the question to the jury. United States v. Griffin, 815 F. App'x 745 (4th Cir. 2020). The Fourth Circuit found this argument meritless because the loss amount calculations by the Court did not alter the statutory minimum or maximum sentences that Petitioner faced. Id. Petitioner did not petition the Supreme Court for a writ of certiorari.

On September 20, 2021,[1] Petitioner timely filed the instant § 2255 Motion to Vacate. [Doc. 1]. Petitioner argues that: trial and appellate counsel provided ineffective assistance with regards to (1) merger and (2) fatal variance; and trial counsel was ineffective with regards to (3) plea negotiations and (4) restitution. Petitioner asks the Court to grant him an evidentiary hearing, vacate his convictions, resentence him, and grant any other relief to which he may be entitled. [Doc. 1 at 12].

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C.A. foll. § 2255 (addressing inmate filings).

5

The Government filed an Opposition to the Motion to Vacate along with exhibits, including affidavits from Petitioner's trial and appellate lawyers. [Docs. 13, 15]. The Government has moved to seal its Opposition and exhibits. [Doc. 16]. Petitioner has filed a Reply[2] and Responses to counsels' affidavits. [Docs. 19, 20]; see also [Doc. 23] (Notice of Supplemental Authority). The matter is now ripe for disposition.

## II.     SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.     DISCUSSION[3]

### 1.     Ineffective Assistance of Trial Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI.

---

[2] Petitioner timely filed his Reply and, accordingly, his Motion seeking an extension of time to do so [Doc. 18] will be denied as moot.

[3] The claims have been liberally construed, restated and renumbered. Any subclaim or argument that is not specifically discussed in this section has been considered and rejected.

6

To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Petitioner raises several ineffective assistance of trial counsel claims that will be addressed in turn.

7

### a. Plea Negotiations

First, Petitioner contends that counsel was ineffective with regards to plea negotiations by: failing to pursue plea negotiations even though Petitioner wanted to "avoid trial and take some responsibility for all the things [he] did wrong;" guaranteeing that Petitioner would be sentenced to 10 to 12 years in prison if he lost at trial; guaranteeing that Petitioner would prevail on direct appeal; failing to provide a written copy of the Government's plea offer and explain his true sentencing exposure; and misadvising him to reject the Government's plea offer. [Doc. 1 at 7; Doc. 1-1 at 11-12]. Petitioner contends that, "[h]ad [he] known that [he] could have had a chance to plea to a lower level, [he] never would have gone to trial" [Doc. 19 at 3]; and, if he had known his true sentencing exposure, he "most certainly would have explored the plea offer [and he] could have had a chance to read it and make a counteroffer" [Doc. 1-1 at 11]. He claims that, due to counsel's ineffective assistance, he was forced to proceed to a trial for which he was not prepared, and was sentenced to 20 years' imprisonment. [Id. at 11-12].

Defendants are entitled to effective assistance of competent counsel during plea negotiations. McMann v. Richardson, 397 U.S. 759, 771 (1970). Effective assistance of counsel at the plea-bargaining stage requires that defense counsel "communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012). This duty certainly applies where a plea offer is formal and with a fixed expiration date. Id. Moreover, "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forego." Libretti v. United States, 516 U.S. 29, 50-51 (1995). Counsel, however, is not ineffective for failing to obtain a plea offer that a defendant is willing to accept. See Weatherford v. Bursey, 429 U.S. 545, 561 (1977) (recognizing "there is

8

no constitutional right to plea bargain").

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance," a petitioner must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Frye, 566 U.S. at 147; Lafler v. Cooper, 566 U.S. 156, 163 (2012). That is, he must show that "but for the ineffective advice of counsel there is a reasonable probability" that he would have pleaded guilty on terms that the prosecution and the court would have accepted, and the conviction or sentence under the plea "would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 566 U.S. at 164. Courts, however, "should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Lee v. United States, 137 S.Ct. 1958, 1967 (2017). Rather, the court should look to contemporaneous evidence of his desire to pursue a particular course of action. Id.

Here, the contemporaneous records demonstrate that counsel did engage in plea discussions with the Government, and discussed such with Petitioner. See [Docs. 15-1, 15-2, 15-3, 15-4]. Petitioner's contention that counsel provided "zero defence [sic]" is too vague and conclusory to support an ineffective assistance claim and, in any event, is conclusively refuted by the record. [Doc 1-1 at 12]; see Rule 2(b)(2), 28 U.S.C. foll. § 2255 (a § 2255 motion "must … state the facts supporting each ground"); United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court); see generally [CR Doc. 144 (Order granting defense counsel's Motion seeking the appointment of an investigator); CR Docs. 205-07 (trial transcripts)]. The parties have submitted conflicting information regarding whether counsel guaranteed

Petitioner a sentence between 10 and 12 years if he lost at trial, guaranteed that Petitioner would win on appeal,[4] sufficiently communicated with Petitioner about the plea offers, or misadvised him to reject the offers. Assuming *arguendo* that counsel performed deficiently, the facts taken in the light most favorable to Petitioner demonstrate that he is not entitled to relief because the record conclusively demonstrates that he would not have accepted any of the Government's plea offers had counsel performed effectively. See United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007) (when § 2255 relief is denied without an evidentiary hearing, the ruling is akin to a ruling on a motion for summary judgment, so that the facts are reviewed in the light most favorable to the § 2255 movant).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[4] This claim is vague and conclusory in that Petitioner does not describe counsel's alleged promise that Petitioner would "win" on appeal. Dyess, 730 F.3d at 354. The Plaintiff admits that he participated in the sweepstakes scheme and that he was willing to plead guilty to at least some offenses; he only contests the extent of his participation. Thus, any suggestion that counsel promised him complete exoneration is inconsistent with his own claims and with the record, and is rejected. Any suggestion that he would have pleaded guilty but for counsel's alleged promise of winning on appeal also fails because, as discussed *infra*, he does not identify any plea that he was willing to accept that would have resulted in a more favorable outcome than the one counsel achieved at trial.

[redacted]

[REDACTED]

Petitioner now vaguely asserts that he "never would not have gone to trial" had he known that he "had a chance to plead to a lower level…."  [Doc. 19 at 3]. This is facially insufficient in that Petitioner does not claim that he would have accepted the proposed Agreement had counsel performed effectively; he claims only that he would have "explored" it and made a counteroffer. [Doc. 1-1 at 11]. Petitioner's theoretical interest in pleading guilty and his desire to negotiate a more favorable offer fail to establish prejudice. See Weatherford, 429 U.S. at 561; Dyess, 730 F.3d at 354.

[REDACTED]

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████ Petitioner explained at the sentencing hearing that he wanted to "just plead guilty to what [he] did and not for what other people in this case have done…" [CR Doc. 234 at 35]. However, no such plea existed and Petitioner's present self-serving attempt to fault counsel for its unavailability fails to establish ineffective assistance of counsel. See Frye, 566 U.S. at 147 ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.").

Petitioner has failed to demonstrate a reasonable probability that he would have accepted any plea that was actually available.  He has not identified an offer that would have resulted in fewer counts to which he was willing to admit his guilt. Nor has he demonstrated a reasonable probability that, if he had pleaded guilty, he would have received a lower sentence than the downward variance sentence of 240 years that he actually received, as discussed *supra*. [See also

13

Doc. 15 at 22-23].

Petitioner's claims that counsel performed ineffectively with regards to plea negotiations are, therefore, denied without an evidentiary hearing.[5]

### b. Merger

Petitioner claims that counsel was ineffective for failing to argue that the money laundering and wire fraud counts merged because: those counts dealt with funds that were used solely for commissions and operating expenses [Doc. 1 at 4; Doc. 1-1 at 1]; all of the wire fraud and money laundering counts involve "the same original monies, from the same victim, being sent from the same places in the United States to the same country of Costa Rica and also similar amounts on the same day or on consecutive days" [Doc. 1-1 at 2]; and there was no evidence "that anyone took steps to clean up or legitimize any of the money…." [Id. at 3].

In United States v. Santos, 553 U.S. 507 (2008), the Supreme Court considered whether the term "proceeds" in the money laundering statute, 18 U.S.C. § 1956(A)(1), means "receipts" or "profits" because the statute did not define "proceeds" prior to 2009. United States v. Abdulwahab, 715 F.3d 521, 529 (4th Cir. 2013). A merger problem occurs when the government attempts to convict a defendant of "money laundering for paying the essential expenses of operating the underlying crime." United States v. Halstead, 634 F.3d 270, 279 (4th Cir. 2011) (when a defendant's crime involves the use of "money transactions to pay for the costs of the illegal activity," the government cannot use those same money transactions to also "prosecute the defendant for money laundering") (internal quotation omitted). No merger problem arises "when the financial

---

[5] Because the Petitioner's allegations are insufficient and are refuted by the record, no evidentiary hearing is required. Cf. United States v. Mayhew, 995 F.3d 171, 179 (4th Cir. 2021) (finding that an evidentiary hearing was required to determine conclusively whether counsel performed deficiently by erroneously guaranteeing that petitioner would receive a sentence of no more than five years if he lost at trial, *where petitioner averred in his petition that he would have accepted the plea* instead of proceeding to trial had counsel properly advised him of the consequences of rejecting the plea).

14

transactions of the predicate offense are different from the transactions prosecuted as money laundering." Id. at 279–80. In order to correct the merger problem in Santos, the Court defined "proceeds" as "profits." See Santos, 553 U.S. at 509. Congress subsequently amended the money laundering statute in 2009 to define "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9); see United States v. Allmendinger, 894 F.3d 121, 127 n.2 (4th Cir. 2018).

Unlike the money laundering provision in Santos, 18 U.S.C. § 1956(A)(1), the international money laundering provision under which Petitioner was convicted, § 1956(a)(2)(A), does not suffer from a merger problem because it does not use the term "proceeds." See, e.g., United States v. Moreland, 622 F.3d 1147, 1166-67 (9th Cir. 2010) (because the international promotion money laundering statute, section 1956(a)(2)(A), contains no proceeds element, Santos is irrelevant); United States v. Krasinski, 545 F.3d 546, 551 (7th Cir. 2008) (same). Moreover, there is no overlap between the wire fraud counts and the international money laundering incidents counts of which Petitioner was found guilty. See Halstead, 634 F.3d at 279-80 ("when the financial transactions of the predicate offenses are different from the transactions prosecuted as money laundering, the merger problem recognized in Santos does not even arise"). Further, Petitioner's argument that there was insufficient evidence to support his international money laundering convictions is unavailing because the international money laundering offense at issue prohibits the transmission of funds into or out of the United States "with the intent to promote the carrying on of specified unlawful activity." § 1956(a)(2)(A). No proof of "cleaning up" or "legitimizing" the money is required.

Counsel was not ineffective for failing to raise these meritless arguments, and these claims

are denied. See generally Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

### c. Fatal Variance

Petitioner contends that fatal variances occurred with regards to the wire fraud, money laundering, and conspiracy counts.

The Fifth Amendment guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. It is therefore "'the exclusive province of the grand jury' to alter or broaden the charges set out in an indictment." United States v. Moore, 810 F.3d 932, 936 (4th Cir. 2016) (quoting United States v. Whitfield, 695 F.3d 288, 309 (4th Cir. 2012)). The Grand Jury Clause is violated "when the indictment is effectively altered 'to change the elements of the offense charged, such that a defendant is actually convicted of a crime other than that charged in the indictment,'" and results in per se reversible error. United States v. Burfoot, 899 F.3d 326, 338 (4th Cir. 2018) (quoting United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994)); United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996). By contrast, a "mere variance" occurs "when the facts proven at trial support a finding that the defendant committed the indicted crime, but the circumstances alleged in the indictment to have formed the context of the defendant's actions differ in some way nonessential to the conclusion that the crime must have been committed…." United States Miller, 882 F.3d 81, 93 (4th Cir. 2018) (quoting Florseca, 38 F.3d at 709). A mere variance "does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial or hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." Whitfield, 695 F.3d at 308.

16

First, Petitioner argues that the specific wire fraud and international money laundering counts that were charged in the Indictment were not proven at trial because the Government presented evidence of different victims, amounts, and dates from those charged. [Doc. 1 at 5; Doc. 1-1 at 6-7]. The record conclusively establishes that no variance occurred with regards to the wire fraud and money laundering counts. The Government presented evidence including testimony and business records demonstrating that Petitioner and several coconspirators were involved in the fraudulent sweepstakes scheme, and that each of the charged offenses actually occurred. See, e.g., [CR Doc. 207 at 42, 44-45] (testimony of Michael Foster); [CR Government Exhibits 19-26]; [CR Doc. 207 at 64] (testimony of Erik Kost); [CR Doc. 206 at 259; CR Doc. 205 at 102] (testimony of a victim and victims' family members); [CR Doc. 205 at 35] (testimony of coconspirator identifying Petitioner in court as "Chris Rhoades" who worked at a fraudulent call center). Petitioner's suggestion that the Government was required to present testimony from each of the fraud victims fails because it was not required to do so; it presented sufficient evidence to prove each Count. See [Doc. 1-1 at 6]; United States v. Taylor, 942 F.3d 205, 213 (4th Cir. 2019) (to establish a wire fraud, the government must prove: (1) the existence of a scheme to defraud; and (2) the defendant used or caused the use of wire communications in furtherance of that scheme); United States v. Caplinger, 339 F.3d 226, 232-33 (4th Cir. 2003) (international money laundering requires proof that the defendant caused funds to be transferred from a place in the United States to a place outside the United States with the intent to promote the carrying on of specified unlawful activity, including wire fraud).

Second, Petitioner argues that a fatal variance occurred because there were multiple conspiracies working against each other, rather than a single conspiracy. [Doc. 1 at 5; Doc. 1-1 at 7-9]. He points to Agent Kost's testimony that he found "no crossover" between co-Defendant

17

Smith and the Baltimore bridge and Petitioner and the Ohio bridge, and testimony of witnesses who worked with Smith in the Baltimore bridge that they could not identify Petitioner, never met him, and never spoke to him. Petitioner claims that counsel made a "halfhearted" objection and did not challenge the jury instructions, and that the Court failed to explain the multiple conspiracy jury instruction such that the jury was likely so confused that it could have transferred evidence from one conspiracy to a Defendant involved in an unrelated conspiracy. [Doc. 1-1 at 7-9].

"In a conspiracy prosecution, a defendant may establish the existence of a material variance by showing that the indictment alleged a single conspiracy but that the government's proof at trial established the existence of multiple, separate conspiracies." United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994); United States v. Ford, 88 F.3d 1350, 1360 (4th Cir. 1996). "[A] single conspiracy can be distinguished from multiple independent conspiracies based on the overlap in actors, methods, and goals." United States v. Bartko, 728 F.3d 327, 344–45 (4th Cir. 2013). To show actual prejudice from a multiple conspiracy variance, a defendant must demonstrate that the multiple conspiracy variance created a spillover effect, such that "the jury was likely to transfer evidence from one conspiracy to a defendant involved in an unrelated conspiracy." Kennedy, 32 F.3d at 883.

Here, the Government proved a single conspiracy with one overall business venture that had overlapping key actors, methods, and goals including evidence that Petitioner (using the name "Chris Rhoades"), Andrew Smith, and others, worked for call centers owned and operated by Lionel Perkins, as part of which victims would be persuaded to send money to Costa Rica in exchange for non-existent sweepstakes winnings. [CR Doc. 205 at 39-41]. There was evidence that Andrew Smith received funds from a Baltimore bridge cell managed by Osman Bah, and that Petitioner received funds from an Ohio bridge cell managed by Paul Toth. [CR Doc. 206 at 28-

18

30, 46, 157-58, 184-85]. The lack of direct wires between the Baltimore bridge cell and Petitioner, and the fact that some of the coconspirators did not know Petitioner, do not undermine the evidence of Petitioner's guilt. See United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993) ("one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence").

Petitioner's suggestion that counsel was ineffective for failing to adequately present this issue at trial is also refuted by the record. Counsel moved for a judgment of acquittal and argued in closing and at sentencing that a multiple conspiracy error had occurred. [CR 207 at 90, 137]. Counsel sought a multiple conspiracy jury instruction, which was granted, and the jury is presumed to have followed that instruction. See Jones v. United States, 527 U.S. 373, 394 (1999). Petitioner's vague arguments that the Court did not adequately explain the multiple conspiracies is insufficient; he fails to identify any jury instruction error and none is apparent in the record. See [Doc. 207 at 148-49]. Further, his argument that "more options" should have been made available on the verdict fails because the jury was instructed that it must return a verdict of not guilty if it finds that he was not a member of the charged conspiracy, but instead was a member of some other conspiracy. [Doc. 1-1 at 8; Doc. 207 at 148-49]. No other option was needed and the guilty verdict indicates that the jury was not persuaded by the multiple conspiracy argument. Petitioner's present argument that that the jury was likely confused is conclusory and refuted by the record as discussed *supra*.

In sum, Petitioner has failed to demonstrate that counsel performed deficiently or that he was prejudiced in any way, and accordingly his variance claims are denied. Knowles, 556 U.S. at 123.

### d. Restitution and Loss Amount

Petitioner argues that trial counsel failed to object to the loss amount that the Court found

19

at sentencing, and to the amount of restitution it ordered. [Doc. 1 at 8; Doc. 1-1 at 13-15].

As a preliminary matter, Petitioner's claim that counsel was ineffective with regards to the restitution order itself is dismissed because, "by its plain terms § 2255 provides no avenue to challenge a restitution order." United States v. Mayhew, 995 F.3d 171, 183 (4th Cir. 2021).

Petitioner claims that counsel provided ineffective assistance with regards to the loss amount are meritless. It is well established that "[s]entencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as th[e] Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict." United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008). This includes the determination of loss attributable by a fraud scheme. United States v. Godwin, 272 F.3d 659, 671 (4th Cir. 2001). The government must establish the loss amount by a preponderance of the evidence, but the court need only make a "reasonable estimate" of the loss. United States v. Shephard, 892 F.3d 666, 673 (4th Cir. 2018) (citations omitted). "[L]oss" is "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n. 3(A).[6] "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." Id. cmt. n. 3(A)(i). "'[R]easonably foreseeable pecuniary harm' means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." Id. cmt. n. 3(A)(iv) (emphasis added). In the case of a conspiracy, loss is attributable to a defendant "if it results from the conduct of others so long as the conduct was in furtherance of, and reasonably

---

[6] Petitioner argues that the Court should not rely on Guidelines commentary pursuant to Kisor v. Wilkie, 139 S.Ct. 2400 (2019), in which the Supreme Court held that an executive agency's reasonable interpretation of its own regulations is entitled to controlling deference only where "the regulation is genuinely ambiguous." See [Doc. 23]. However, the Fourth Circuit has held that Kisor does not apply to the official commentary in the Guidelines Manual. United States v. Moses, 23 F.4th 347, 357 (4th Cir. 2022). Thus, "the Guidelines commentary is authoritative and binding, regardless of whether the relevant Guideline is ambiguous, except when the commentary 'violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of,' the Guideline." Id. (quoting Stinson v. United States, 508 U.S. 36, 38 (1993)).

foreseeable in connection with the criminal activity." United States v. Otuya, 720 F.3d 183, 191 (4th Cir. 2013) (internal quotations omitted). "A defendant's membership in a conspiracy is presumed to continue until he withdraws from the conspiracy by affirmative action…." United States v. West, 877 F.2d 281, 289 (4th Cir. 1989). "[M]ere cessation of activity in furtherance of the conspiracy is insufficient." United States v. Shephard, 892 F.3d 666, 673 (4th Cir. 2018) (quoting United States v. Walker, 796 F.2d 43, 39 (4th Cir. 1986)).

Defense counsel objected that the loss amount of $9.5 million and 20-level enhancement in the PSR were excessive, and argued strenuously that the loss attributable to Petitioner was less than $1.5 million. See [CR Doc. 198] (PSR Objections); [CR Doc. 234 at 15]. The Court sustained the objection in part, found that the loss attributable to Petitioner to be over $6 million, and reduced the loss enhancement from 20 levels to 18 levels. [CR Doc. 234 at 26-27]. The Court also varied downward and sentenced Petitioner to a total term of just 240 months' imprisonment. [CR Doc. 218 at 3] (Statement of Reasons). This sentence was well below the statutory maximum of 20 years' imprisonment for each of the 17 counts, plus an additional 10 years, consecutive, for Counts One through Seven, Nine, and Ten. See [CR Doc. 201 ¶ 94].

Petitioner's contentions that the loss amount should have been charged in the Indictment and found by the jury are legally flawed. "Because the Sentencing Guidelines are advisory, judicial factfinding at sentencing does not violate the Sixth Amendment." United States v. Manlapaz, 825 F. App'x 109, 115 (4th Cir. 2020). The loss amount in the instant case did not increase Petitioner's minimum mandatory or statutory maximum sentence. Accordingly, the loss amount did not need to be charged in the Indictment, admitted by Petitioner, or found by the jury. See Fed. R. Crim. P. 7(c); U.S.S.G. § 1B1.3; see also United States v. Hayes, 322 F.3d 792 (4th Cir. 2003) (reversing with instructions to apply § 1B1.3 to determine whether to treat some or all of the non-indictment

losses as relevant conduct); United States v. Gomes, 605 F. App'x 147, 149 (4th Cir. 2015) (rejecting the defendant's argument "that the district court violated his Sixth Amendment right to a jury trial by judicially finding the loss amount rather than by submitting this question to the jury"). Petitioner has failed to establish that counsel was ineffective in any way, and his mere disagreement with the Court's findings is insufficient to support § 2255 relief.

## 2. **Ineffective Assistance of Appellate Counsel**

Petitioner claims that appellate counsel was ineffective for failing to raise the merger and variance issues on direct appeal. The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised." Allmendinger, 894 F.3d at 126. To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); United States v. Rangel, 781 F.3d

736, 745 (4th Cir. 2015).

The merger and variance claims that Petitioner faults appellate counsel for failing to present on direct appeal are meritless as discussed in Sections b and c, *supra*. Counsel cannot be deemed deficient for failing to raise these meritless claims, nor is there any reasonable probability that they would have prevailed on appeal had counsel raised them. See Rangel, 781 F.3 at 745 (denying claim of ineffective assistance of appellate counsel where the claim at issue did not have a reasonable probability of success on direct appeal). Therefore, the Plaintiff's claims of ineffective assistance of appellate counsel are denied.

### 3. **Motion to Seal**

Finally, the Government moves to seal its Opposition to the Motion to Vacate and exhibits [Doc. 15], and the materials filed by Petitioner's former counsel [Doc. 13], because they discuss attorney-client communications, confidential plea discussions, and other sealed filings. [Doc. 16]. The deadline for the Petitioner to respond to the Motion to Seal has expired and no response has been submitted.

There is a "presumption under applicable common law and the First Amendment that materials filed in this Court will be filed unsealed." LCvR 6.1(a); see Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988). However, a court has authority to seal documents before it based upon the court's inherent supervisory authority over its own files and records. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). The denial of access to documents under the First Amendment must be necessitated by a compelling government interest that is narrowly tailored to serve that interest. See In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986); In re State-Record Co., Inc., 917 F.2d 124, 127 (4th Cir. 1990). Before sealing judicial records, a court must identify the interest that overrides the public's right to an open court,

and articulate supporting findings specific enough that a reviewing court can determine whether the order was properly entered. See Press–Enterprise Co. v. Superior Ct. of Ca., 464 U.S. 501, 510 (1984). When addressing motions to seal, the Court must consider alternatives to sealing and specify whether the sealing is temporary or permanent and also may redact such orders in its discretion. LCvR 6.1.

Here, the Court finds that the materials filed in Document Nos. 13, 15-1, 15-2 and 15-3 contain confidential and sensitive information, and that no alternatives to sealing these exhibits would adequately protect the information contained therein. Accordingly, the Motion to Seal those documents, except as to the parties, will be granted as to until further order of the Court. The Motion will be denied as to the excerpt of the sentencing hearing transcript [Doc. 15-4] because that document is already publicly available in the criminal case, and that the Government has failed to justify sealing it in this proceeding. As to the Government's Opposition to the Motion to Vacate [Doc. 15], although that document refers to some confidential information, it appears that sealing it in its entirety is not warranted. Redacting the Opposition appears to be a ready alternative to sealing it, and is a more narrowly tailored means of protecting the confidential information it contains from the public's view. The Motion to Seal is, therefore, denied as to the Opposition. The Government will be required to file a proposed redacted version of its Opposition within 21 days of this Order. The Clerk will be instructed to maintain the Opposition under temporary seal until the matter of redacting it is resolved.

Moreover, the instant Order refers to the exhibits containing confidential information that the Court has determined should be sealed. It likewise concludes that those portions of the Order should be redacted from public view. The Clerk of Court will, therefore, be instructed to seal an unredacted version of the instant § 2255 Order, and to separately docket a redacted version of the

24

Order which will be made available to the public.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate is denied, the Respondent's Motion to Seal is granted in part and denied in part, and the Petitioner's Motion for Extension of Time is denied as moot.

**IT IS, THEREFORE, ORDERED** that:

1.      Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 [Doc. 1] is **DENIED**.

2.      Petitioner's Motion for Extension of Time [Doc. 18] is **DENIED** as moot.

3.      Respondent's Motion to Seal [Doc. 16] is **GRANTED** in part and **DENIED** in part. Document Nos. 13, 15-1, 15-2, and 15-3 shall be permanently **SEALED** until otherwise ordered by this Court. Document No. 15-4 shall be **UNSEALED**.

4.      The Respondent shall file proposed redactions to Document No. 15, within **twenty-one (21) days** of this Order. The Clerk is instructed to maintain the unredacted Opposition [Doc. 15] under temporary seal until further order of the Court.

5.      The Clerk is instructed to docket the Redacted Order on the public docket, and is further directed to file the unredacted Sealed Order under permanent seal.

6.      **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is

25

denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: February 17, 2023

Robert J. Conrad, Jr.
United States District Judge

26